STATE OF MISSOURI ex rel. J. H. HARTLEY, Respondent, v. INNES et al., Appellants.

**St. Louis Court of Appeals, April 20, 1909.**

1. **JUDICIAL SALES: Setting Aside Sale: Finding by Inference.** On the trial of a motion to set aside a sheriff's sale, the evidence was conflicting as to whether the sheriff had promised the attorney for the defendant to notify him when the sale should take place, and the judge said, on hearing the testimony: "Mr. Sheriff, you must not hereafter make any promises to notify attorneys . . . of the time of sale under execution. Let the notice that is published be the only notice given." The remark was equivalent to a finding that the promise was made.

2. ———: **Setting Aside Sale: Inadequate Consideration: Accident and Surprise.** Inadequate consideration for property sold at sheriff's sale, joined with accident or surprise to a party interested, constitute grounds for setting aside the sale on a timely motion.

3. ———: ———: ———: ———. Real estate was sold by the sheriff under execution issued upon a judgment for taxes. The tax suit was brought by the owner of the land for the purpose of clearing the title. The sheriff, prior to advertising the land for sale, promised the attorney for the owner that he, the attorney, should be notified when the sale would take place, but failed to give such notice though the attorney was diligent in inquiring about it. The property was sold for one-fifth its value, and the party who caused the suit to be brought moved to set the sale aside before the purchase price was paid. The sale should have been set aside.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

REVERSED AND REMANDED.

*J. P. McCammon* for appellant.

The deputy, while denying the promise, had testified to his having been there twice for that purpose, and had testified that on the day of sale a bystander had

said to him in the sheriff's office just before the sale took place, that Mr. McCammon was interested in the sale and wanted to be present—but no effort was made to let him know of the sale. The court then immediately after the deputy's testimony said: "Mr. Sheriff, you must not hereafter make any promise to notify attorneys of the time of sale under executions." This was, in effect, a finding that the sheriff had made a promise in this case, and the reason the sale was not set aside was because the court considered those facts did not entitle appellant to the relief, or that the sale could not be vacated, on motion—but required a suit in equity. That the court erred in this view of the law we think is clear in the light of the decisions. The failure to give appellant's attorney notice of the sale after the promise to do so, where he failed to hear of it otherwise or where there was a sacrifice of her property was a fraud upon her and is ground for vacating the sale. Freeman on Ex., secs. 308, 309; Stewart v. Nelson, 25 Mo. 309; Stewart v. Severance, 43 Mo. 322; Chesley v. Chesley, 49 Mo. 540; Massey v. Young, 73 Mo. 260; Lusk v. Briscoe, 65 Mo. 555.

*G. W. Goad* for respondents L. F. Stepp and R. T. T. Renshaw.

In absence of any findings of facts or declarations of law appellant is not justified in assuming that the trial court found the disputed facts in her favor, but erred in matters of law. The contrary is the correct rule and binding on this court. Gibson v. Bailey Co., 114 Mo. App. 350; Farmers Bank v. Barbee, 198 Mo. 465; Desteiger v. Martin & Kinney, 162 Mo. 417; Bethune v. Railroad, 139 Mo. 574; Sell v. Bretelle, 162 Mo. 373; Warder Co. v. Allen, 63 Mo. App. 457; Corrigan v. Kansas City, 93 Mo. App. 173. It is not part of the sheriff's duty to seek out and give special notice to parties concerned in sales to attend them. Bayley v. Smock, 61 Mo. 213; Meier v. Zelle, 31 Mo. 331. The

burden of proof is on the appellant to establish any fraud, accident or mistake connected with the sale and by evidence that must be clear and convincing. Keiser v. Gammon, 95 Mo. 217; Forrister v. Scoville, 51 Mo. 268; Jackson v. Wood, 88 Mo. 76.

GOODE, J.—Appeal from a judgment overruling a motion to set aside an execution sale of a lot in the city of Springfield, under a judgment for the amount of the delinquent taxes on the lot for the year 1902, rendered against Rosina I. Kellett and twenty-nine other defendants, as the heirs of Susan Ann Innes, deceased. The tax suit was permitted to correct a flaw in the title and the attorney for Mrs. Kellett looked after the case, wrote the execution on the judgment, had it put in the hands of the sheriff to advertise and sell the property, and told said officer he (said attorney) wished to be present at the sale, which would occur during the September term of the circuit court, 1905. During the term the attorney for the heirs went to the sheriff's office and asked a deputy once, or the sheriff, or both, if a day had been fixed for execution sales for taxes and was told no day had been fixed. According to the attorney the deputy agreed to notify him when a sale day was fixed so he (the attorney) could be present and bid in the property for his client, and the attorney, relying on this promise, which was not kept, failed to attend the sale and the property was sold to other parties for $100; or less than one-fifth its conceded value. A motion was filed in the circuit court before the purchasers had paid their bid, to set aside the sale and was overruled after a hearing. The testimony of the deputy sheriff and that of the attorney for Mrs. Kellett, agreed regarding inquiries by the attorney about when the sale would take place, but the deputy denied promising to notify the attorney of the day of the sale. On the sale day a man called the deputy's attention to the fact that Mrs. Kellett's attorney was interested in the sale and

the deputy said he did not speak to or telephone said attorney after being told this, because he supposed the latter would be present at the sale. The attorney testified he did not see the published advertisement of the sale and knew nothing of notice having been given until after the property had been sold; that he was diligent in inquiring at the sheriff's office, but after the deputy promised to notify him of the day of sale when it was fixed, he relied on the promise and gave no further attention to the matter. When appellant's attorney testified to the promise by the deputy, the court said:

"Mr. Sheriff, you must not hereafter make any promises to notify attorneys, nor notify them of the time of sale under execution. Let the notice that is published be the only notice given. It is the business of attorneys to look after the executions in which they are interested."

Without conceding the sale should be set aside if the sheriff or his deputy promised to inform Mrs. Kellett's attorney the date it would occur, the attorney for the purchasers argues that as the motion to set aside was overruled and the facts were not expressly found or declarations of law given, the court below must be presumed to have found the promise was not made. The court's direction to the sheriff to give no promise to notify attorneys of the dates of execution sales in the future, seems rather inconsistent with a finding that none had been given in the present instance, and suggests the motion was determined against appellant for some other reason. But this remark was not equivalent to finding positively the attorney had been promised, and we must dispose of the appeal on the assumption the court below found he had not been. We do this in deference to the decision of the Supreme Court in Holden v. Vaughn, 64 Mo. 588, that a motion to set aside an execution sale lies on the law side of a court, and the evidence taken at the hearing of such a motion cannot be weighed on appeal. The extent of the contention for

the purchasers upon this point is, that the court below found the deputy gave no promise and not that the attorney was without a belief or impression to the contrary. It is palpable if none was given, there was a misunderstanding between the deputy and the attorney, and that the latter fully believed he was to be notified, acted on the belief, and was thereby led to make no further inquiry or watch for an advertisement of the sale. The testimony is uniform that he inquired one or more times whether a day for execution sales had been fixed, that he had written the execution and put it in the sheriff's hands and was known by the latter and his deputy to be interested in the sale of the premises. In the course of the conversations which occurred, if no definite promise was made by the deputy to let him know when the sale would occur, the attorney might have gathered the opposite impression without being so remiss in the discharge of duty as to deprive his client of the relief to which, otherwise, she would be entitled. We say this because careful men often misapprehend the substance and effect of conversations over business affairs, and it is manifest the attorney could have understood the deputy would notify him of the day of sale, from statements made by the latter which were not meant as a promise. Such workings of two minds at cross-purposes are common and would justify our ruling if there were no apposite precedents; whereas there are many, as will be seen infra. The question for decision comes down to this: considering all the facts we have stated, including the purpose of the tax suit, the sacrifice of the property at less than one-fifth of its value, the prompt move to set aside the sale before the purchase money had been paid or the sheriff's deed executed, and that it is possible to do so without causing loss to the purchasers, can a court grant relief consistently with settled legal doctrines? Execution sales may be set aside on motion for about the same reasons judicial sales, in the strict sense of the words, may be.

The reason of this rule is that on motion a court can control its own process to prevent injustice. [Ray v. Stobbs, 28 Mo. App. 422; Rogers & Baldwin Hdw. Co. v. Building Co., 132 Mo. 442; 2 Freeman, Executions (3 Ed.), sec. 308.] Though the rule prevails in this State that these motions must be heard and determined according to legal procedure, it is none the less true that equitable principles are applied to the facts, to ascertain whether the sale should stand or be vacated; as is shown in the cases just cited and those to be cited. The gross inadequacy of the price is a circumstance of weight; for though the courts have professed on numberless occasions, they would not vacate a sheriff's sale for this reason, the judgments actually pronounced by them show their bark is worse than their bite. When the inadequacy of the bid was very great, some circumstance of irregularity, mistake, fraud or injustice was searched for diligently and nearly always found, which enabled the court to save its face while preventing confiscation. In Hdw. Co. v. Building Co., 132 Mo. l. c. 462, the dissenting opinion declared inadequacy of price was usually no ground for setting aside sheriffs' sales which had become final, but that this was not more than a half-truth as applied to the review of such a sale upon motion made before it had become a finality; and that remark expresses what is even more strongly the doctrine of the majority opinion. In Davis v. McCann, 143 Mo. 172, a proceeding in the nature of a suit in equity to set aside a sheriff's sale of land, and controlled by the same principles which ought to be applied to the present motion, the Supreme Court said inadequacy of price alone would not justify setting aside sales of lands under executions, unless the price was so low as to shock the moral sense and outrage the conscience; but if it was, the courts would interfere for justice. In Holdsworth v. Shannon, infra, it was said "inadequacy of price without more, unless so gross as to shock the moral sense" would not suffice as ground to set aside a

foreclosure or execution sale.    Notwithstanding those expressions, we consider that other decisions leave the question unsettled in this State.    As additional facts are available for the ends of justice in the present matter, we will follow the fashion of other courts in similar cases, and refrain from resting our decision in favor of appellant on the single circumstance that the property was sacrificed.    The element of accident or surprise is in the case within the meaning of those terms as used in equity jurisprudence, which embraces not only various forfeitures due to accidents in the popular sense, "but such unforeseen events, misfortunes, losses, acts or omissions as are not the result of any negligence or misconduct of the party."    [1 Story, Eq. Jur., sec. 78.] According to the definition of another eminent writer, accident "is an unforeseen and unexpected event, occurring external to the party affected by it and of which his own agency is not the proximate cause; whereby, contrary to his own intention and wish he loses some legal right or becomes subjected to some legal liability, and another person acquires a corresponding legal right, which it would be a violation of good conscience for the latter person, under the circumstances, to retain."    [2 Pomeroy, Eq. Jur. (3 Ed.), sec. 823.] A standard illustration of accident in this sense, is the payment by an executor of legacies under the mistaken belief there will be sufficient assets of the estate left to meet its obligations, when, unless negligence or bad faith can be imputed to him, he will be allowed to recover of the legatees. [2 Pomeroy, sec. 837, par. 5, and cases cited in the notes.]    The word "surprise" is used interchangeably with "accident" to designate such emergencies, both words signifying a detrimental condition or situation wherein a party is placed unexpectedly, against which ordinary prudence would not have guarded. [1 Am. and Eng. Ency. Law (2 Ed.), 278; McGuire v. Drew, 83 Cal. 225.]    This ground of relief has been utilized by courts in setting aside execution and judicial

sales upon the motion or at the suit of parties who were prevented by some misunderstanding or mistake of theirs, or their agents or attorneys, from being present to protect their interests; and that, too, in cases where the misapprehension or other fortuity could not be laid at the door of either the officers conducting the sale or the purchasers, but was due to an erroneous belief or impression of the petitioner for relief or his attorney, for which no one was to blame. A reading of the opinions cited *infra* will demonstrate that the doctrine we have stated has been sanctioned by eminent masters of jurisprudence in judgments rendered on facts practically identical with those before us; the prices having been no more sacrificial or the fault of the complainant less; and wherein the decision was put squarely on the ground that the party moving against the sale had been prevented by surprise or accident from learning when or where it would occur. We refer particularly to the eight authorities first cited, which are from outside jurisdictions, and to Holdsworth v. Shannon, 113 Mo. 508, wherein their doctrine was approved by our Supreme Court, as it ought to be if justice is to be preferred to opportunism in these controversies. [Seamans v. Riggin, 2 N. J. Eq. 214; Howell v. Hester, 2 N. J. Eq. 266; Wetzler v. Schaumann, 24 N. J. Eq. 61; Williamson v. Dale, 3 Johnson's Chan. 290; Bixley v. Meade, 18 Wend. 611; Tripp v. Cook, 26 Wend. 143; Hoppock v. Conklin, 4 Sanford's Chan. 582; Griffin v. Hadley, 4 Bosw. (N. Y.) 587; Hdw. Co. v. Build. Co., 132 Mo. supra; McKee v. Logan, 82 Mo. 508; Am. Wine Co. v. Scholer, 13 Mo. App. 435; 85 Mo. 496; Graffan v. Burgess, 117 U. S. 180; Schroeder v. Young, 161 U. S. 334; Rorer, Judicial Sales (2 Ed.), sec. 1095.]

We have examined the cases cited for the purchasers, chief of them being Meir v. Zelle, 31 Mo. 331, and Bailey v. Smock, 61 Mo. 213, and find nothing therein which stands in the way of relief to appellant. In the former there appears to have been no evidence to

prove the attorney of the land owner had been misled concerning the sale, and it was distinctly stated he had not been. The other case did not involve the point of law in hand, but was an action against an indorser for a balance left due on a promissory note after foreclosure of a mortgage given to secure it. The indorser set up the defense that the indorsee had agreed to notify him of the date the foreclosure sale would occur and had not done so, and the question was whether this averment constituted a defense.

The judgment is reversed and the cause remanded to be proceeded with in accordance with this opinion. All concur.